IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| VINCENT ERIC SCOTT )<br>                   **Petitioner,** )<br>                             )<br>                             )<br>v.                              )<br>                             )<br>**ROGER WERHOLZ,** )<br>**Kansas Secretary of Corrections;** )<br>**and** )<br>**STEPHEN SIX** )<br>**Kansas Attorney General,** )<br>                   **Respondents.** )<br>_____) | **CIVIL ACTION**<br><br>**No. 08-3266-KHV** |

## **MEMORANDUM AND ORDER**

Pursuant to 28 U.S.C. § 2254, pro se petitioner Vincent Eric Scott seeks a writ of habeas corpus, claiming various constitutional violations arising out of his state court convictions for burglary, aggravated sexual sodomy and rape. Petition For Writ Of Habeas Corpus (Doc. #1) filed October 20, 2008. For the reasons stated below, the Court denies the petition.

### **Factual Background**

On August 27, 1997, while on patrol at approximately 12:15 a.m., Officer Patrick Boucard of the Olathe Police Department saw a white Buick Riviera with a cream colored top. See Record, Vol I, p. 82 in Kansas v. Scott, Case No. 98 CR 2782 in the District Court of Johnson County, Kansas. Boucard knew that Scott and his girlfriend Michelle Green drove a similar car and that Scott's license was suspended. Id. Officer Boucard could not identify the driver, but he notified dispatch that he had seen the car. Id.

Around this same time the Olathe Police Department dispatched Sergeant Matt Smith regarding a burglary at an Olathe gun shop. Id. at 83. While driving east on Santa Fe, Sgt. Smith saw a white late model Buick Riviera driving west. Id. Sgt. Smith saw that the driver was a lone

black male. He could not identify the driver but recognized the vehicle as one which Scott drove and he recalled that Scott had a suspended licence. Id. at 84. At approximately 1:40 a.m., officers arrived at the gun shop and saw that the door had been pried open but that a ground lock had prevented it from opening enough for a person to enter. Id. Officers saw that the front window of the gun shop was broken and that blood was leading from the window to the south parking lot and was also inside the gun shop. Id. A glass display case had been broken and six 9mm handguns, four knives and ammunition had been stolen. Id.

That evening, Officer Boucard and Officer Donald Van Hoose proceeded to 815 North Pine Street in Olathe, where they believed Scott resided. Id. at 83. When Officer Van Hoose arrived at the residence, he saw the white Buick Riviera and a dark colored Ford Escort parked outside. Id. Officer Van Hoose returned to 815 North Pine after hearing that a white Riviera had been seen leaving the area of the gun shop burglary. Id. Officer Van Hoose noted that the Riviera was gone from 815 North Pine, but that the Escort was still parked outside the residence. Id. He later saw the Ford Escort leave 815 North Pine, and he followed it to 602 West Prairie where he again saw the Riviera. Id. at 84. After positioning his vehicle to conduct surveillance, Officer Van Hoose saw the Escort leave 602 West Prairie, return and leave again around 4:00 a.m. Officer Van Hoose followed the Escort and initiated a traffic stop because he could not read the tag on the vehicle. Id. at 85. Officer Van Hoose approached the driver's side and saw Scott, who was in the passenger seat, and a black female driver later identified as Tanisha Hinton. Id. Officer Van Hoose placed Hinton under arrest on an outstanding warrant, and officers questioned Scott about whether he had cuts on his hands or arms. Id. Scott repeatedly refused to talk to the officers or cooperate with their questioning. Id. None of the officers saw any cuts or marks and Scott eventually left the scene on

foot. Id.

Later that day, Officer Grant Allen of the Olathe Police Department was conducting surveillance near 1720 North Lennox when he saw a 1982 Buick Riviera leave an apartment complex. Id. at 86. The Riviera, which was driven by a white female and occupied by two black males, matched the description of the vehicle seen leaving the gun shop. Id. Officer Allen ran a records check and found that the tag on the Riviera was expired. Id. After radioing for back-up, Allen initiated a traffic stop on Renner Road in Olathe. Id. Several officers drew their weapons and directed the passengers to exit the vehicle with their hands raised. Id. Scott exited the vehicle and retreated to the rear of the vehicle. Id. Two officers questioned Scott and noticed fresh cuts on his left ring finger and a cut on his right forearm. Id. Around this time, the driver (Michelle Green, Scott's girlfriend) consented to a search of the Riviera. Id.[1] After further questioning by law enforcement and being notified that he was a suspect in the gun shop burglary, Scott left the scene on foot. Id. at 87.

Officers towed the Riviera to the police station, where a search revealed particles of broken glass, a hammer, a tire iron, a crowbar and blood stains on the front passenger seat. Based on the this evidence and evidence of Scott's cuts, officers sought and obtained a search warrant to procure biological samples from Scott. See Scott, No. 88,129 at 7. A DNA analysis later disclosed that the blood collected at the gun shop matched the sample taken from Scott. Id.

---

[1] Scott argues that Green consented to the search under duress because she wanted to get back home to meet her son who was returning from school and because officers threatened that if she did not consent they would hold her for a longer period. See Petitioner's Memorandum Of Law In Support of 28 § 2254 Petition (Doc. #4) filed November 6, 2008 at 6. After Scott left the scene, however, Green consented to have the vehicle towed so the police could conduct a more thorough search. See State v. Scott, No. 88,129 at 7 (Kan. Ct. App., May 2, 2003). Green later denied having consented to the towing of the vehicle. Id.

**Procedural Background**

On June 16, 1998, in connection with the gun shop break-in, the Johnson County District Attorney charged Scott with one count of burglary in violation of K.S.A. § 21-3715, one count of felony theft in violation of K.S.A. § 21-3701 and one count of criminal damage to property in violation of § 21-3720. See Record, Vol I, p. 7-8 in Kansas v. Scott, Case No. 98 CR 1568 in the District Court of Johnson County, Kansas.[2] Several weeks after Scott's indictment on these charges, the district attorney matched his DNA with DNA from samples obtained in an unsolved 1996 rape case. As a result, on October 21, 1998, the Johnson County District Attorney also charged Scott with one count of rape in violation of K.S.A. § 21-3502 and one count of aggravated criminal sodomy in violation of K.S.A. § 21-3506. See Record, Vol I, p. 7-8 in Kansas v. Scott, Case No. 97 CR 2782 in the District Court of Johnson County, Kansas.

In both cases, Scott moved to suppress the DNA and fingerprint evidence. The court denied these motions, see Record, Vol. III at 62-3 in Kansas v. Scott, Case No. 97 CR 2782 in the District Court of Johnson County, Kansas, and Scott pled no contest to all charges in Case No. 1568 and no contest to the rape and sodomy charges in Case No. 2782. See Record, Vol. V in Kansas v. Scott, Case No. 97 CR 2782 in the District Court of Johnson County, Kansas. Scott entered these pleas

---

[2] When the Johnson County District Attorney charged Scott in Case No. 1568, he was incarcerated on a prior conviction. On April 28, 1997, the Johnson County District Attorney had charged Scott with one count of aggravated robbery in violation of K.S.A. § 21-3427, one count of obstructing justice in violation of K.S.A. § 21-3808, one count of possession of marijuana in violation of K.S.A. § 65-4162(a) and two counts of battery against a law enforcement officer in violation of K.S.A. § 21-3413. See Record, Vol I, p. 6-7 in Kansas v. Scott, Case No. 97 CR 539 in the District Court of Johnson County, Kansas. On April 15, 1998, a jury found Scott guilty on all counts. Id. at 90. On July 16, 1998 the court sentenced Scott to 130 months in prison. See Record, Transcript Of Sentencing, p.46 in Kansas v. Scott, Case No. 97 CR 539 in the District Court of Johnson County, Kansas. Hereinafter, this conviction is referred to as Case No. 539.

4

pursuant to a written plea agreement which purported to reserve his right to appeal from the denial of his suppression motions. Id. at 9.

Scott timely appealed the denial of his suppression motions and the Kansas Court of Appeals consolidated the appeals in Case No. 1568 and Case No. 2782 to determine whether counsel had been ineffective in advising Scott that he could enter conditional pleas in the two cases. See State v. Scott, Appeal No. 99-84055-A (June 20, 2000); Vol. I at 94. On remand, the district court appointed new counsel and allowed Scott to withdraw his plea and reargue his motions to suppress. The district court again denied the motions to suppress and defendant thereafter agreed to a court trial on stipulated facts. See Vol. I at 26, 28; Vol. VII at 30, 32. The initial appeal was therefore dismissed as moot. See State v. Scott, Appeal No. 99-84055-A (Mandate dated Jan. 25, 2001). The Honorable Peter V. Ruddick tried the two cases on stipulated facts on March 29, 2001. See Transcript Of Proceedings in Kansas v. Scott, Case Nos. 98 CR 1568, 98 CR 2782. That same day, he found Scott guilty of burglary, rape and aggravated sodomy and sentenced him to 300 months in prison, consecutive to his sentence in Case No. 539. As part of a disposition agreement, the district court dismissed the theft and criminal damage to property charges.

Scott appealed his convictions in Case Nos. 1568 and 2782, challenging the denial of his motion to suppress and arguing that the evidence against him was obtained in violation of the Fourth Amendment. In State v. Scott, No. 88,129 (Kan. App. May 2, 2003), the Kansas Court of Appeals affirmed Scott's conviction. On July 9, 2003, the Kansas Supreme Court denied review. See Answer And Return (Doc. #8) filed December 23, 2008 at 3. Between July 16 and September 10, 2004, Scott filed various motions for post-conviction relief under the Kansas habeas corpus statute, K.S.A. § 60-1507, alleging ineffective assistance of counsel, denial of due process and lack of

jurisdiction based on a procedural defect in the charges. On February 15, 2005, the Johnson County District Court consolidated Scott's claims under Section 60-1507 and denied relief without holding a hearing. On November 21, 2007, the Kansas Court of Appeals affirmed. See Scott v. Werholtz, 38 Kan. App. 2d 667, 171 P.3d 646 (2007). On appeal, Scott set forth three separate arguments. He first argued that trial counsel was ineffective in allowing him to proceed to a bench trial on stipulated facts. See id. at 667-68. He next argued that trial counsel was ineffective in failing to argue that under the Fourth Amendment, DNA evidence obtained in his burglary case could not be compared with DNA evidence from unsolved rape cases. Id. Scott finally argued that the trial court lacked jurisdiction because no complaint or information was filed after the preliminary hearing, in violation of K.S.A. § 22-2905. Id. The Court of Appeals rejected these arguments and affirmed Scott's conviction. On May 28, 2008, the Kansas Supreme Court denied review. See Scott v. Werholtz, No. 06-96601, 2008 Kan. LEXIS 264 (Kan. May 28, 2008).

On October 20, 2008, Scott filed a petition for writ of habeas corpus in this Court, asserting essentially the same arguments that he raised on direct appeal and in his state motion for post-conviction relief.

## Standards For Habeas Petitions Under 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in relevant part at 28 U.S.C. § 2254, governs the Court's review. Under Section 2254, as amended by AEDPA, the Court may not issue a writ of habeas corpus with respect to any claim that the state court adjudicated on the merits unless that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d)(1), (2).

Under the "contrary to" clause, the Court may issue a writ of habeas corpus only if (1) the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or (2) the state court decided the case differently than the Supreme Court on a set of materially indistinguishable facts. See Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, the Court may grant habeas relief if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. The Court may not issue a writ simply because it concludes, in its independent judgment, that the state court applied clearly established federal law erroneously or incorrectly; rather, the application must have been objectively unreasonable. See id. at 409-11.

The Court presumes "that factual determinations made by the state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence." Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)) and Fields v. Gibson, 277 F.3d 1203, 1221 (10th Cir. 2002)). This presumption does not extend to legal determinations or to mixed questions of law and fact. Id. (citing Herrera v. Lemaster, 225 F.3d 1176, 1178-79 (10th Cir. 2000)). That is, the "deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue." Id. (quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)). Ultimately, this Court's review of the state court proceedings is quite limited, as Section 2254(d) sets forth a highly deferential standard for evaluating state court rulings. Anderson v. Mullin, 327 F.3d 1148, 1152 (10th Cir. 2003).

**Analysis**

Scott raises five issues in his habeas petition: (1) that the trial court erred in receiving evidence seized in violation of the Fourth Amendment right; (2) that the trial court did not appoint counsel for post-conviction proceedings; (3) that trial counsel was ineffective; (4) that appellate counsel was ineffective; and (5) that the state courts lacked jurisdiction because of a procedural defect in the original complaint.

**I.     Fourth Amendment Claim**

Scott maintains that officers seized evidence from his person and the Riviera in violation of his Fourth and Fourteenth Amendment rights against illegal searches and seizures and that these illegal searches render his conviction invalid. See Petitioner's Memorandum Of Law In Support of 28 § 2254 Petition (Doc. #4) filed November 6, 2008 at 9.  Scott further argues that the initial searches were pretextual, that officers lacked a reasonable suspicion to search him or the vehicle, and that the state courts did not provide him a full and fair opportunity to litigate this matter. See Traverse (Doc. #14) filed January 22, 2009 at 15.  Respondent argues that a state prisoner is not entitled to habeas corpus relief on the ground that the trial court received evidence in violation of the Fourteenth Amendment.  See Answer And Return (Doc. #8) filed December 23, 2008 at 9.

On direct appeal of the denial of his motions to suppress, the Kansas Court of Appeals resolved the claim against Scott.  Specifically, it found that the officers were lawfully in a position to observe Scott's exposed hands and forearms and that evidence of his cuts was admissible under the plain view doctrine.  See Scott, No. 88,129 at 14.   It further found substantial competent evidence to support a voluntary consent to search the Escort.  See id.

Where the state has provided a full and fair opportunity to litigate a Fourth Amendment

claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. Stone v. Powell, 428 U.S. 465, 494 (1976); accord Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992). Further, the AEDPA provides that federal courts cannot grant habeas relief on a claim a state court adjudicated on the merits unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Webster v. Workman, 106 Fed. Appx. 663, 665 (10th Cir. 2004) (citing 28 U.S.C. §§ 2254(d)(1) & 2254(d)(2)). Additionally, state court findings are presumed correct unless the petitioner rebuts this presumption with clear and convincing evidence. Id. (citing 28 U.S.C. § 2254(e)(1)).

Here, Scott received a full and fair opportunity to litigate his Fourth Amendment claim. His Fourth Amendment challenge to the vehicle search was presented at two separate trial court hearings on his motion to suppress, and twice on direct appeal to the Kansas Court of Appeals. See Scott v. Werholtz, 38 Kan. App. 2d 667, 171 P.3d 646 (2007); State v. Scott, No. 88,129 at 7 (Kan. Ct. App., May 2, 2003); see also Case. No. 98-CR-1568, Transcript of Motion to Suppress, December 17, 1998; Transcript of Motion to Suppress, February 10, 1999. A careful review of the record demonstrates that each reviewing court applied federal law and made a reasonable determination given the factual context. Accordingly, this claim does not warrant federal habeas relief. See Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of federal habeas relief based on alleged Fourth Amendment violations because petitioner presented issue to court on direct appeal); Chavez v. Rodriguez, 540 F.2d 500, 502 (10th Cir. 1976) (hearing on motion to

9

suppress and consideration of issue on appeal satisfied Stone v. Powell).

**II.     Failure To Appoint Counsel**

Scott argues that the district court erred in denying his request for appointment of counsel on his motion for post-conviction relief under K.S.A. § 60-1507. See Petition For Writ Of Habeas Corpus (Doc. #1) filed October 20, 2008 at 7. Respondent responds that Scott had no right to the assistance of counsel in state collateral proceedings and that failure to appoint post-conviction counsel cannot be the basis for federal habeas relief. See Answer And Return (Doc. #8) filed December 23, 2008 at 10.

If a motion pursuant to K.S.A. § 60-1507 presents no substantial issues of fact or question of law, the district court is not required to appoint counsel or hold a hearing. See Doolin v. State, 24 Kan. App.2d 500, 501, 947 P.2d 454, 456 (1997) (citing Rhone v. State, 211 Kan. 206, 208, 505 P.2d 673 (1973)). The court applies an abuse of discretion standard to a district court's decision not to appoint counsel and summary dismissal of a 60-1507 motion. Gilkey v. State, 31 Kan. App.2d 77, 78, 60 P.3d 351, 351 (2003). An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. Saucedo v. Winger, 252 Kan. 718, 730-32, 850 P.2d 908 (1993).

In reviewing Scott's 60-1507 motion, the district court carefully considered his arguments and made a reasonable application of the relevant law on each issue. See Order in Scott v. Kansas, Case No. 04 CV 5344 in the District Court of Johnson County, Kansas (Feb. 15, 2005). The district court did not abuse its discretion in refusing to appoint counsel because Scott's 60-1507 petition did not present any issue of fact or question of law not previously addressed by the Kansas Court of Appeals in Scott, No. 88,129 (Kan. Ct. App., May 2, 2003). Therefore, to the extent that Scott's

petition is based on the district court's failure to appoint counsel for his appeals pursuant to K.S.A. § 60-1507, it is denied.

### III.     Ineffective Assistance Of Trial Counsel

Scott argues that trial counsel was ineffective in letting him be convicted on the basis of stipulated facts and that he did not agree to the stipulated facts because he did not fully understand the contents of the disposition agreement. See Petition For Writ Of Habeas Corpus (Doc. #1) filed October 20, 2008 at 7; see also Traverse (Doc. #14) filed January 22, 2009 at 11. Scott also argues that his attorney incorrectly informed him that he would not be able to appeal the denial of his motion to suppress unless he agreed to a trial on stipulated facts. See Traverse (Doc. #14) filed January 22, 2009 at 11. Scott further maintains that his attorney incorrectly informed him that "he would receive more time in the penitentiary" unless he agreed to a trial on stipulated facts. See Traverse (Doc. #14) filed January 22, 2009 at 11. Respondent does not address this claim.

#### A.     Ineffective Assistance

To prevail on an ineffective assistance claim, defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See United States v. Taylor, 454 F.3d 1075, 1079 (10th Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)). Our review is "highly deferential" and we "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. Counsel is not ineffective where an attorney recommends a trial on stipulated facts as part of a reasonable legal

11

strategy. See, e.g., Hensley v. Crist, 67 F.3d 181, 184 (9th Cir. 1995) (counsel advised submitting case to trial on stipulated facts to avoid preserving testimony of two key state witnesses).

The Kansas Court of Appeals summarized the discussion between Scott, his attorney and the trial court concerning his stipulated offer or proof, as follows:

> [T]he trial court ensured that Scott understood he was waiving his right to a jury trial and was proceeding to a bench trial on stipulated facts based on the disposition agreement. Specifically, the following discussion took place between the trial judge and Scott at trial:
>
> "[Trial judge:] As part of the Disposition Agreement which has been presented in writing to the Court, you would, first of all, waive your right to a jury trial of both of these cases. You do have a right to have both of these cases heard by a jury of your peers at trial, and by submitting the case to the Court on the Stipulated Offer of Proof, then I will make the determination of your guilt based upon that Offer of Proof. Do you understand that?
> "[Scott:] Yes, sir.
> "[Trial judge:] You are waiving your right to a jury trial in both cases?
> "[Scott:] Yes.
> "[Trial judge:] Do you have any other statements you wish to make?
> "[Scott:] No."
>
>     Defense counsel then made clear that he had discussed this course of action with Scott several times. Defense counsel questioned Scott about why he chose this course of action:
>
> "[Defense counsel:] And the purpose here is to present the appeal and the motions, and you still want the benefit of the bargain, and I've explained and given you my advice on how best to accomplish that?
> "[Scott:] What I understand is that this is the best route for me at this time, okay. Based on the stipulated facts without going to jury and to preserve my rights in appellate court, and my whole purpose of taking this is to still reserve my rights without giving myself more time, okay. And this is what I understand. This is what we have talked about."
>
>     The trial court later questioned Scott about whether he had an opportunity to thoroughly review the stipulated offer of proof. Scott responded, "I had an opportunity to briefly go over that at this time." Scott's attorney informed the trial court that the stipulated offer of proof was the same offer that had been made previously with only a few changes. Indeed, the record in this case reveals that the stipulated offer of proof submitted at the bench trial was nearly identical, save for a

12

few minor changes, to the stipulated offer of proof submitted to the trial court when Scott pled no contest to the charges. Scott's attorney stated that he had gone over the changes with Scott and that Scott had a copy of the stipulated offer of proof. Indeed, Scott acknowledged to the trial court that he had gone over the stipulated offer of proof with his attorney.

In denying Scott relief on his K.S.A. 60-1507 motion, the trial court rejected Scott's argument that his trial counsel was ineffective for allowing him to be convicted on stipulated facts at a bench trial. Determining that the record established that Scott understood and wished to proceed to a bench trial on stipulated facts, the trial court stated:

"A review of the record reveals that great efforts were made by counsel and the court to ensure that petitioner was aware and understood the implications of his decision to proceed on stipulated facts and waive a jury trial. The record is clear. The petitioner responded that he had spoken with his counsel on more than one occasion about the matter. Further, that he understood 'that this was the best route for me at this time' and his whole purpose was to preserve his rights. He indicated that he understood and wished to proceed with a bench trial under stipulated facts according to the disposition agreement."

Scott, 38 Kan. App.2d at 672, 171 P.3d at 650.

The record indicates that Scott understood that he was agreeing to a trial on stipulated facts to preserve for appeal the issue whether the initial police stop constituted a valid search. As evidenced by the testimony of Scott's attorney at the disposition hearing, Scott agreed to the trial on stipulated facts as part of a legal strategy aimed at preserving his right to appeal the denial of his motions to suppress. See Transcript Of Proceedings in Case No. 98-CR-1568, March 29, 2001 at 6. Scott's attorney also indicated that he did not believe that Scott "would be in a position to prevail at the time of trial." Id. Given counsel's misgivings about Scott's possibility of prevailing at trial, the advice to proceed on stipulated facts to preserve the search issue for appeal was a reasonable legal strategy which cannot be said to fall below an objective standard of reasonableness. Therefore Scott has not proven that trial counsel was deficient under the first prong of Strickland. In addition, Scott has not demonstrated a reasonable probability that but for counsel's decision to proceed on

13

stipulated facts, the result of the proceeding would have been different.

The record contains no evidence that the performance of trial counsel fell below an objective standard of reasonableness in any of the respects alleged, or that but for the alleged errors, the result of the proceeding would have been different.

### B. Agreement To Trial On Stipulated Facts

Scott also argues that he did not agree to trial on stipulated facts, and that he only acknowledged the disposition agreement after informing the trial court that he had briefly reviewed it. See Petitioner's Memorandum Of Law In Support of 28 § 2254 Petition (Doc. #4) filed November 6, 2008 at 27; see also Traverse (Doc. #14) filed January 22, 2009 at 11-14. Scott cites United States v. Stalder for the proposition that an agreement to trial on stipulated facts is equivalent to a guilty plea. See United States v. Stalder, 696 F.2d 59, 62 (8th Cir. 1982). In Stadler, the Eighth Circuit Court of Appeal addressed what constitutes proper consent to a trial on stipulated facts:

> In United States v. Lawriw, 568 F.2d 98, 105 n.13 (8th Cir. 1977), we . . . held that "an inquiry as thorough as that prescribed by Fed. R. Crim. P. 11 is not required before the district court accepts a stipulation of facts establishing guilt from a criminal defendant." The question rather is whether the defendant was sufficiently addressed "as to the rights that she surrendered as a result of signing the stipulation". . . [w]ith perhaps one exception, the other courts of appeals that have addressed the issue have reached the same conclusion. See Witherspoon v. United States, 633 F.2d 1247 (6th Cir. 1980); United States v. Strother, 578 F.2d 397 (D.C. Cir. 1978). The District of Columbia Circuit has suggested that Rule 11 procedures may be required if a stipulation effectively admits guilt and waives trial on all issues, United States v. Lawson, 682 F.2d 1012, 1015 (D.C. Cir. 1982), but even that court has not squarely so held. Cf. Cox v. Hutto, 589 F.2d 394, 395-96 (8th Cir. 1979), in which a state-court conviction was set aside because based on a stipulation that was the functional equivalent of a guilty plea, but which had been entered into without the knowledge and consent of the defendant.

Here, Judge Ruddick personally addressed Scott concerning the rights that he was surrendering as a result of the stipulation:

14

> "[Trial judge:] As part of the Disposition Agreement which has been presented in writing to the Court, you would, first of all, waive your right to a jury trial of both of these cases. You do have a right to have both of these cases heard by a jury of your peers at trial, and by submitting the case to the Court on the Stipulated Offer of Proof, then I will make the determination of your guilt based upon that Offer of Proof. Do you understand that?
> "[Scott:] Yes, sir.
> "[Trial judge:] You are waiving your right to a jury trial in both cases?
> "[Scott:] Yes.
> "[Trial judge:] Do you have any other statements you wish to make?
> "[Scott:] No."

Scott, 38 Kan. App.2d at 672, 171 P.3d at 650. Judge Ruddick informed Scott that by agreeing to trial on stipulated facts, he was foregoing his right to a jury trial. Scott's attorney went to great pains to clarify that he and Scott had discussed the stipulated offer of proof at length on multiple occasions and that he had informed Scott of all options. The record conclusively indicates that Scott consented to a trial on stipulated facts, and that Judge Ruddick properly determined his consent before he proceeded to adjudicate the case on the stipulated offer of proof.

## IV.  Ineffective Assistance of Appellate Counsel

Scott argues that appellate counsel was ineffective in not arguing that comparison of his DNA sample to DNA samples in unrelated crimes violated his Fourth Amendment rights. See Petition For Writ Of Habeas Corpus (Doc. #1) filed October 20, 2008 at 8; see also Traverse (Doc. #14) filed January 22, 2009 at 5-9. Respondents contend that appellate counsel's failure to raise this issue was not ineffective assistance because he was not required to present novel legal arguments. See Answer And Return (Doc. #8) filed December 23, 2008 at 11.

Under Strickland, the same standards apply to appellate counsel and trial counsel. See Smith v. Workman, 550 F.3d 1258, 1268 (10th Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 285 (2000)).

The Kansas Court of Appeals rejected Scott's argument that counsel was ineffective for failing to raise this issue. In doing so, it followed the law of other jurisdictions that have addressed this issue and held that the evidence obtained during the burglary investigation could be used in the investigation of other crimes for identification purposes. See Scott, 38 Kan. App.2d at 676-77, 171 P.3d at 653. The issue was one of first impression in Kansas when counsel failed to raise it, and counsel's failure to raise it cannot be said to fall below an objective standard of reasonableness. Scott cannot establish that the alleged ineffectiveness met the first prong of the Strickland test or that but for the alleged error of counsel, the result of the proceeding would have been different. None of the cases addressing this issue have held that defendants have a Fourth Amendment right to keep legally obtained evidence in one case from being compared to evidence obtained from other crime scenes.

Because Scott has failed to meet both prongs of Strickland, his claim for ineffective assistance of appellate counsel must fail.

**V.    Lack of Jurisdiction**

Scott argues that under K.S.A. § 22-2905 the trial court lacked jurisdiction in the consolidated cases because no complaint or information was filed after the preliminary hearing. See Petition For Writ Of Habeas Corpus (Doc. #1) filed October 20, 2008 at 24. Respondents argue that this claim is a matter of state law interpretation and not cognizable on federal habeas review. See Answer And Return (Doc. #8) filed December 23, 2008 at 14.

Scott contends that the State was required to re-file the complaint or file an information after he was bound over at preliminary hearing, and that the trial court lacked jurisdiction because it did not do so. K.S.A. 22-2905(1) states as follows:

16

> When a defendant is bound over to a district judge for trial, the prosecuting attorney shall file an information in the office of the clerk of the district court, charging the crime for which the defendant was bound over. If the complaint is in proper form, pursuant to K.S.A. 22-3201 and amendments thereto, it may be used as the information.

K.S.A. § 22-2905. The Kansas Court of Appeals held that in giving effect to the entire statute, a prosecutor is not required to file a second complaint or information after a defendant is bound over for trial when the prosecutor is not amending the original charges. See Scott, 38 Kan. App.2d at 678, 171 P.3d at 654. It further held that since a valid complaint was filed in both of Scott's cases, the prosecutor had no reason to re-file an information or complaint to comply with K.S.A. § 22-2905. Id.

Federal courts are bound to accept a state court's construction of that state's statutes. Parker v. Scott, 394 F.3d 1302, 1319 (10th Cir. 2005) (quoting Missouri v. Hunter, 459 U.S. 359, 368 (1983)). A state court's interpretation of a state statute is a matter of state law binding on this court in habeas proceedings. Id. This interpretation of state law is not objectively unreasonable and is not contrary to, or an unreasonable application of, governing Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). Therefore, Scott's claim that the trial court lacked jurisdiction over his case must fail.

For the reasons discussed above, the Court concludes that Scott's habeas petition does not establish any instance where the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § (d)(2).

17

Further, the record conclusively shows that Scott is not entitled to relief. Accordingly, no evidentiary hearing is required. See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1998) (no hearing required where factual matters raised by a § 2255 petition may be resolved on record).

**IT IS THEREFORE ORDERED** that Scott's habeas petition be and hereby is **DENIED**.

Dated this 2nd day of June, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Court